### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**TIMOTHY R.,**[1]

      **Plaintiff,**

                                 **Case No. 1:24-cv-1148**

     **v.**                           **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Timothy R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On January 14, 2020, Plaintiff filed an application for benefits, alleging that he has been disabled since December 28, 2019. R. 135, 149, 278–79. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 150–55, 162–64. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 165–66. ALJ Karen Shelton held a hearing on August 1, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 82–121. In a decision dated October 24, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 28, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 24–37. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on January 12, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 10, 2025, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[3] On February 11, 2025, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

　　　　Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

5

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 37 years old on December 28, 2019, his alleged disability onset date. R. 35. He met the insured status requirements of the Social Security Act through December 31, 2024. *Id*. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, carpal tunnel syndrome, obesity, bipolar disorder, and post-traumatic stress disorder ("PTSD"). *Id*.  The ALJ further found that Plaintiff's visual disturbance, chronic liver disease, and diabetes mellitus were not severe impairments. R. 26–27. The ALJ also found that there was no objective or clinical evidence to support the existence of knee and shoulder pain, hypermobility syndrome, and fibromyalgia. R. 27.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28–30.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 31–35. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a hotel clerk and game attendant. R. 35.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g*., jobs as a linen grader, a photocopy operator, and a collator operator–existed in the national economy and could be performed by Plaintiff with this RFC. R. 36–37. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 28, 2019, his alleged disability onset date, through the date

of the decision. R. 37.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

## IV.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.     Lawrence G. Mintzer, Ph.D.

On April 3, 2020, Lawrence G. Mintzer, Ph.D., conducted a mental examination of Plaintiff. R. 427–31. Plaintiff reported that he drives only infrequently and that his mother had driven him to the appointment. R. 427. He lives with his parents and with one of his three children. *Id*. As a child, he was in constant fear of his father. R. 428. Most of Plaintiff's employment was in fast foods (including management), window working, and private security. R. 429. He last worked as a slot technician and stopped working in December 2019 because "I had a ton of physical issues." R. 427–28. He also has problems with depression and has difficulty leaving the house for fear that someone will hurt him. R. 427. However, he was not undergoing any mental health treatment. *Id*.  Dr. Mintzer noted Plaintiff's reported activities of daily living:

> Mr. R[.] doesn't do any of the cleaning at his home because "I'm going to hurt myself doing it." He doesn't do any of the cooking because "It's not my kitchen." Mr. R[.] does only a very small amount of the grocery shopping because "Being on my feet too long hurts." Mr. R[.] said that he usually gets along well with people "even though I don't like people. I'm afraid of people. Everyone has betrayed me." Mr. R[.] is not involved in any group activities. He doesn't get together with any

8

> friends. Mr. R[.] sometimes sees his brother and he also sees his nephew. Mr. R[.] takes care of paying his own bills. He keeps up with his grooming and hygiene. On a typical day it takes him two hours after he gets up to not be in severe pain. He watches TV. He noted, "I don't do much."

*Id*. Plaintiff's medical history included vision problems (from cornea transplants); herniated disc; three bulging discs; two pinched nerves in his neck; bilateral carpal tunnel syndrome; two herniated discs and two pinched nerves in his lower back; hypermobility syndrome throughout his body; diabetes; low testosterone; fatty liver; and high triglycerides. *Id*. Plaintiff reported one psychiatric hospitalization, at age 16 or 17, for depression following the deaths of his uncle and grandmother. *Id*. Upon mental status examination, Dr. Mintzer observed the following:

> Mr. R[.] was oriented to person, place, and time. He was casually dressed and adequately groomed. He is of average height and he is somewhat overweight. At times he grimaced and shifted in his seated position, appearing to be in some physical pain. Mr. R[.]'s speech was within normal limits. Mr. R[.] seemed somewhat depressed. His affect was mildly constricted. Mr. R[.] has never experienced either auditory or visual hallucinations.
>
> Mr. R[.]'s thought processes were goal-directed, and his speech was coherent. There were no indications of any delusional thoughts, but Mr. R[.] mentioned that he just lost two of his children because he left his ex-girlfriend. He said that his former girlfriend "had my daughter claim that I molested her." There were no indications of any suicidal thoughts. Mr. R[.] has never made a suicide attempt. There were no indications of any homicidal thoughts. Mr. R[.] does experience ideas of reference, believing that other people are talking about him, laughing at him, and/or staring at him. Mr. R[.] has a fear of leaving his house. He said that he is claustrophobic.
>
> Mr. R[.]'s abstract thinking is good. His fund of general knowledge is fairly good. His capacity to perform simple calculations is fair. Mr. R[.]'s concentration was fairly good; for instance, he performed serial sevens somewhat slowly, getting one of the first six numbers incorrect. He was able to correctly spell the word "world" both forwards and backwards. Mr. R[.]'s intelligence is estimated to be in the average range.
>
> Mr. R[.]'s remote memory is good. His recent memory is fair; for example, he was able to recall two out of three items after one minute and again after five minutes. He was unable to recall what he had eaten for dinner on the evening prior to my meeting with him. Mr. R[.]'s immediate retention and recall are fair; for example, he was able to repeat six digits forward and four digits in reverse. Mr. R[.]'s

> impulse control is good; for instance, he does not have any problems with his temper. Mr. R[.]'s social judgment is poor; for instance, he said that if he found an envelope on the street that was sealed, addressed, and had a new stamp, he "wouldn't touch it." Mr. R[.]'s insight is good. He seems to be a reliable informant.

R. 429. Dr. Mintzer diagnosed major depressive disorder, recurrent, severe, and PTSD. *Id*. According to Dr. Mintzer, Plaintiff "has an illness that is expected to last for the next 12 months. Mr. R[.]'s limitations are caused by a combination of physical health problems and psychological problems. Overall, Mr. R[.]'s limitations are moderate to severe in degree." *Id*. Plaintiff's prognosis "appears to be guarded." R. 430.

**B.    State Agency Mental Consultants**

Consultant Steven Reed[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on April 13, 2020. R. 34 (reflecting consultant's credentials), 122–34. According to Consultant Reed, the record documented the severe medically determinable impairments of depressive, bipolar and related disorders, as well as trauma and stressor-related disorders. R. 127. In conducting the psychiatric review technique and considering the paragraph B criteria of Listings 12.04 (addressing depressive, bipolar and related disorders) and 12.15 (trauma and stressor-related disorders), Consultant Reed opined that Plaintiff was moderately limited in two of the broad areas of functioning (abilities to interact with others and to concentrate, persist, or maintain pace) and was mildly limited in the remaining two areas of functioning (abilities to understand, remember, or apply information and to adapt or manage oneself). R. 128. In assessing Plaintiff's mental RFC, Consultant Reed found, *inter alia*, that Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal

---

[4] The ALJ refers to this consultant as "Steven Reed, Ph.D.," R. 34, but the credentials of this state agency consultant are not immediately apparent in the record.

workday or week without interruptions from psychologically based symptoms and to perform at

a consistent pace without unreasonable rest periods. R. 131. Under the heading "MRFC—

Additional Explanation," Consultant Reed further explained his opinion as follows:

> -No IP psych Tx MER; CL reported one psych hospitalization during adolescence;
>
> -ADLs: Notwithstanding limitations associated with his reported physical impairments, CL is able to manage daily affairs.
>
> However, on his AOL form (also 3P AOL form), and then at recent psych CEMSE, CL provided a convincing description of suffering psychologically, and chronically. He described having ongoing difficulty with attention, concentration, memory, and task completion; pervasive sad mood/anhedonia, low motivation, despairing outlook and a sense of self-loathing; also, he reported a pattern of social withdrawal and  avoidance. He noted that "now that I have Medicaid I will be seeking some mental help."
>
> At CEMSE, he was AOx3, with coherent, goal-directed TP; no s/s psychosis or mania; affect was mildly constricted; he performed adequately on cognitive screening portion of MSE; consistent with his self-description on the AOL form, he described numerous Sx of depression and a pattern of social avoidance. Per CE, Ox = MOD, recurrent, severe; and PTSD.
>
> CL's MFC is Moderately Impaired. In a work-like setting with a predictable routine and relatively light interpersonal demands, he would be able to carry out tasks with adequate CPP, relate adequately, and adapt to routine changes.

R. 132.

Consultant Pamela Foley[5] reviewed Plaintiff's medical record upon reconsideration for

the state agency on June 26, 2020. R. 136–48. She agreed with Consultant Reed that the record

documented the severe psychological impairments of depressive, bipolar and related disorders

and trauma and stressor-related disorders with mild and moderate paragraph B findings. R. 141.

Consultant Foley further agreed that Plaintiff was moderately limited in, *inter alia*, his abilities to

perform activities within a schedule, maintain regular attendance, and be punctual within

---

[5] The ALJ refers to this consultant as "Pamela Foley, Ph.D.," R. 34, but the credentials of this state agency consultant are not immediately apparent in the record.

customary tolerances and to complete a normal workday or week without interruptions from

psychologically based symptoms and to perform at a consistent pace without unreasonable rest

periods. R. 144. Under the heading "MRFC—Additional Explanation," Consultant Foley opined

as follows:

> RECON:
> The claimant is a 38 year old man who is requesting reconsideration of a DIB
> denied at the initial level on 4/14/2020 with no mental allegation but a moderate
> MRFC. Original evidence supports the initial finding. Clmt does not allege
> worsening and still has no direct mental allegation. There is no new evidence at the
> recon level.
>
> Prior rating is affirmed as written.

R. 145.

## V.    DISCUSSION

### A.    RFC Determination

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b) except he can only stand/walk for 4 hours and sit for 6 hours in
> an 8-hour workday; can only occasionally climb ramps and stairs, but never climb
> ladders, ropes or scaffolds; can only occasionally balance, stoop, kneel, crouch or
> crawl; and can frequently handle and finger. Additionally, the claimant is able to
> understand, remember, and carry out simple, routine and repetitive tasks in a routine
> work environment with few changes; can make simple work decisions; can perform
> work that is goal oriented rather than strict quota oriented; can work for 2 hours
> before needing a standard 15 minute break; and can have occasional contact with
> supervisors, coworkers and the public, that is brief and superficial in nature.

R. 31. Plaintiff argues that, for several reasons, substantial evidence does not support this

determination. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 7–19; *Plaintiff's Reply Brief*,

ECF No. 13, pp. 1–4. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §

404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with

determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In finding that Plaintiff had the RFC for a limited range of light work, the ALJ detailed years of record evidence regarding Plaintiff's mental impairments,[6] including, *inter alia*, Plaintiff's hearing testimony that he panics and had been recently hospitalized for six days and had participated in intensive individual therapy, that he struggles to sleep and feels tired and fatigued, which makes him feel stuck, angry, frustrated, ashamed, and worthless; that he spends most of day watching "YouTube stuff," playing video games, or listening to music although he attempts to complete a task every day and tries to walk a few times a week for exercise and that he goes grocery shopping monthly; Plaintiff 's history of mental illness with a voluntary hospitalization in 2001; that Plaintiff sought mental health treatment in January 2021, endorsing

---

[6] Plaintiff's RFC challenges focus on Plaintiff's mental impairments and the Court's discussion will do the same.

"some severe PTSD problems," citing panic attacks 3-4 times per week, lasting 5-10 minutes at a time when dealing with "official" things, but stating that these improve when his mother takes care of these things and when he isolates; his endorsement of severe anxiety, flashbacks, episodes of depersonalization, hypervigilance, apathy, anhedonia, anergy and avolition, and constant depression; evidence that, although Plaintiff had started medication and that his primary care provider had taken over Plaintiff's mental health treatment, there was no evidence that he had continued with mental health treatment; Plantiff's December 2021 report that Vistaril had resulted in a great reduction of anxiety; Plaintiff's June 2022 admission to a psychiatric facility for suicidal ideation with a plan, and Plaintiff's report that he was taking prescribed medication and was experiencing increased depression due to life stressors, including unemployment, loss of custody of his two children due to child abuse allegations, physical impairments, and lack of finances; evidence that, during that hospitalization, Plaintiff was minimally compliant with treatment, isolating himself throughout the day, not participating in group therapy, but taking psychotropic medications; Plaintiff's report that this hospitalization was "peaceful," because he needed a break from life's responsibilities, sleep, and time to think; Plaintiff's request, after a few days, for discharge because he felt okay and denied suicidal ideations; evidence that, subsequently, Plaintiff participated in an acute partial care program for PTSD with major depressive disorder; evidence that, by August 2022, treatment was reduced to an outpatient level of care; and evidence that Plaintiff's care was thereafter routine and conservative, consisting mainly of medications as prescribed by his primary care provider. R. 32–35. The ALJ went on to explain the RFC determination as follows:

> Based on a thorough review of all the evidence and subjective reports, the undersigned finds that the claimant retains the residual functional capacity to perform light work except he can only stand/walk for 4 hours and sit for 6 hours in an 8-hour workday; can only occasionally climb ramps and stairs, but never climb

14

ladders, ropes or scaffolds; can only occasionally balance, stoop, kneel, crouch or crawl; and can frequently handle and finger. Additionally, the claimant is able to understand, remember, and carry out simple, routine and repetitive tasks in a routine work environment with few changes; can make simple work decisions; can perform work that is goal oriented rather than strict quota oriented; can work for 2 hours before needing a standard 15 minute break; and can have occasional contact with supervisors, coworkers and the public, that is brief and superficial in nature. This residual functional capacity assessment takes into account all of the claimant's legitimate conditions and resulting limitations imposed on the claimant and looks at the evidence in the light most favorable to the claimant. The claimant has a lot of complaints, but there is little objective evidence to support those complaints.

R. 35. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554. Plaintiff

nevertheless challenges the ALJ's RFC determination. *Plaintiff's Memorandum of Law*, ECF No.

6, pp. 7–19; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–14.

Plaintiff first argues that the ALJ "critically ignored the Plaintiff's depression or anxiety

diagnoses providing no meaningful discussion of these impairments or their impact upon the

Plaintiff's ability to perform work functions in the decision[.]" *Plaintiff's Memorandum of Law*,

ECF No. 6, p. 10 (noting further that Plaintiff's "depression resulted in suicidal thoughts with a

plan that resulted in a week-long inpatient hospitalization followed by an intensive outpatient

partial day program").

Plaintiff's argument is not well taken. As an initial matter, "[a] diagnosis alone . . . does

not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009)

(citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91

F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the

diagnosis of an impairment rather than the functional limitations that result from that

impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under

the Act"). Moreover, Plaintiff simply points to these diagnoses and his mental health treatment

without explaining how these facts support his allegation of reversible error in the ALJ's decision. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 10;[7] *see also Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Notably, and as detailed above, the ALJ expressly considered Plaintiff's inpatient hospitalization and his subsequent intensive outpatient treatment. R. 32. Plaintiff's argument, therefore, apparently boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."). To the extent that Plaintiff invites the Court to reweigh the evidence, the Court declines to do so. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *cf. Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff next contends that the RFC determination is flawed because "it fails to contemplate the Plaintiff's established limitations performing work activity on a regular and

_____

[7] Plaintiff also advances another argument related to this evidence, which the Court addresses later in this decision.

continuing basis." *Plaintiff's Memorandum of Law*, ECF No. 6, p. 10. In advancing this

argument, Plaintiff first points to the ALJ's consideration of the opinions of the state agency

reviewing psychologists. *Id*. at 10–11 (citing R. 34–35, 131, 144). In crafting Plaintiff's RFC, the

ALJ specifically considered, *inter alia*, these opinions:

> In the initial determination, Steven Reed, Ph.D. opined that the claimant's mental impairments result in mild limitations in understanding, remembering or applying information and adapting or managing oneself and moderate limitations in interacting with others and concentrating, persisting or maintaining pace (Exhibit 1A, page 5). In the reconsideration determination, Pamela Foley, Ph.D. affirmed Dr. Reed's opinion (Exhibit 3A, page 6). The undersigned only finds these opinions *somewhat persuasive, as the claimant's recent voluntary hospitalization and subsequent treatment supports a finding that he is slightly more limited, as detailed above.*

R. 34–35 (emphasis added). According to Plaintiff, the ALJ's RFC does not reflect the state

agency limitations in his ability to maintain sustained work activity, nor did the ALJ address how

these limitations would impede his ability to work on a regular and continuing basis. *Plaintiff's

Memorandum of Law*, ECF No. 6, pp. 10–11 (citing R. 131, 144, and pointing to state agency

findings that Plaintiff is "at least moderately limited in several key areas of mental function,

including the abilities to perform activities within a schedule, maintain regular attendance, and

be punctual within customary tolerances, to complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without

an unreasonable number and length of rest periods, among others"); *see also Plaintiff's Reply

Brief*, ECF No. 13, p. 1. Plaintiff contends that, although the ALJ characterized him as more

limited than did the state agency consultants, the RFC contains no restrictions—such as absences

from work and time off task—to accommodate even the state agency consultants' opinions of

moderate limitations. *Id*. The RFC is therefore incomplete and, because the ALJ accorded partial

17

weight to the state agency opinions and found Plaintiff even further restricted than did those consultants, the RFC is beyond this Court's review. *Id*.

The Court is not persuaded that this issue requires remand. As an initial matter, the moderate limitations that Plaintiff highlights appear in the worksheet portion of the state agency opinions, which is not the operative portion of those opinions, *i.e.*, not the opinion regarding the RFC. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) ("'Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and *does not constitute the RFC assessment*.'") (emphasis in the original) (quoting POMS DI 24510.060, *available at* https://secure.ssa.gov/apps10/porns.nsf/lnx/0424510060); R. 130–31 ("The questions below help determine the individual's ability to perform sustained work activities. *However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion*. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation). Any other assessment information deemed appropriate may be recorded in the MRFC - Additional Explanation text box.") (emphasis added), 78 (same); *cf. Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("But we have said that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of RFC assessments and that their focus instead should be on the narrative portions of the assessments where the medical experts expound on their opinions.") (citations omitted). The ALJ therefore had no obligation to reconcile any alleged inconsistency between the actual MRFC in the narrative section (which appeared under the heading "MRFC – Additional Explanation") and the moderate limitations contained in the worksheet. *Id*.

Moreover, in finding Plaintiff moderately limited in his abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and to complete a normal workday and workweek without interruptions from psychologically based symptom and to perform at a consistent pace without an unreasonable number and length of rest periods, Consultants Reed and Foley expressly referenced their narrative discussions under the heading, "MRFC – Additional Explanation." R. 131, 144 (referring to "see below" when asked to explain in narrative form the limitations and/or capacities in sustained concentration and persistence). In that narrative explanation, as detailed above, the state agency reviewing consultants found that Plaintiff was "[m]oderately impaired" but "[i]n a work-like setting with a predictable routine and relatively light interpersonal demands, he would be able to carry out tasks with adequate CPP [concentration, persistence, and maintaining pace], relate adequately, and adapt to routine changes." R. 132, 144 (noting that Plaintiff has a moderate mental RFC and affirming prior rating as written). Stated differently, Consultants Reed and Foley detailed and explained in the narrative discussion the parameters of Plaintiff's mental functional limitations. *See id*. The ALJ accommodated these limitations by restricting Plaintiff to understanding, remembering, and carrying out simple, routine and repetitive tasks in a routine work environment with few changes; making simple work decisions; and working for 2 hours before needing a standard 15 minute break. R. 31; *cf. Hess v. Comm'r Soc. Sec*., 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example,

19

performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

Plaintiff further contends that the RFC does not reflect the ALJ's finding that Plaintiff was even "more limited" than was found by the state agency psychological consultants, thus preventing subsequent reviewers, such as this Court, from understanding Plaintiff's limitations. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 11; *Plaintiff's Reply Brief*, ECF No. 13, p. 2. This Court disagrees. The RFC limited Plaintiff to, *inter alia*, work that is goal oriented rather than imposing strict quotas and limited Plaintiff to contact with supervisors, coworkers, and the public that is only occasional, brief, and superficial in nature. R. 31. These RFC limitations are more restrictive than those in the state agency mental RFC, which concluded that Plaintiff could "carry out tasks with adequate CPP" and could "relate adequately" to others. R. 132, 145.[8]

Plaintiff goes on to insist that his week-long inpatient hospitalization in June 2022 and his participation "in an intensive out-patient program, which met five days per week from 8:30am to 2:30p.m." "[u]ndoubtedly" "interfered with the Plaintiff's ability to perform work functions on a regular and continuing basis." *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 11–12 (citing R. 709); *see also Plaintiff's Reply Brief*, ECF No. 13, pp. 1–2. Plaintiff contends that the ALJ's failure to properly consider this treatment, by failing to include absences and off-task limitations in the RFC, is not harmless because the vocational expert testified that absence from work up to

---

[8] To the extent that Plaintiff suggests that the ALJ's paragraph B findings at step three were inconsistent with the RFC, warranting remand, *Plaintiff's Reply Brief*, ECF No. 13, p. 2, that argument is unavailing. The Court has already explained that the RFC appropriately accommodated all credibly established limitations flowing from Plaintiff's mental impairments. Moreover, "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Hess*, 931 F.3d at 209.

two days per month and/or being off task 15% or more of the work day would preclude competitive employment. *Id*. This argument is not well taken.

As previously explained, the ALJ expressly considered this evidence when crafting the RFC; Plaintiff's insistence that this medical treatment requires greater RFC limitations boils down to simply a disagreement with the ALJ—who has the duty to craft the RFC—and whose decision the Court has already explained is supported by substantial evidence. *See Chandler*, 667 F.3d at 361; *Perkins*, 79 F. App'x at 514–15; *Markoch*, 2020 WL 7586953, at *4–5. The Court therefore again declines Plaintiff's invitation to re-weigh the evidence or to impose his—or this Court's—own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611. In any event, Plaintiff has not shown that his week-long hospitalization and outpatient treatment lasted for a period of twelve months. *See Plaintiff's Memorandum of Law*, ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 13; R. 709; *Barnhardt v. Walton*, 535 U.S. 212, 214–15, 225 (2002) (explaining that, to qualify for disability insurance benefits, a claimant's "inability to engage in any substantial gainful activity" caused by an impairment "must last, or must be expected to last, for at least 12 months") (cleaned up). Moreover, as Plaintiff emphasizes, his outpatient program met consistently at a scheduled time. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 11; *Plaintiff's Reply Brief*, ECF No. 13, p. 2. Plaintiff offers no explanation why he would be unable to work outside those regular, specified times. *See Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 493–94 (D.N.J. 2022) (noting that the claimant's treatment was not "frequent, lengthy, or disruptive" and that "Plaintiff's doctor's appointments were scheduled and he was able to maintain a work schedule despite them"); *Santiago Hernandez v. Comm'r of Soc. Sec.*, No. CV 19-18528 (KM), 2020 WL 5229373, at *7 (D.N.J. Sept. 2, 2020) ("Moreover, [the claimant's] partial hospitalization obligations were not sporadic and unpredictable; to the contrary, they were

21

clearly scheduled with discrete beginning and end times.") (remanding on other grounds); *cf.*
*Kangas v. Bowen*, 823 F.2d 775, 776–77 (3d Cir. 1987) (remanding where the ALJ failed to
consider the claimant's need of regular and continuous treatment consisting of eight
hospitalizations, several of which required seven-to-ten days of in-patient treatment followed by
one-to-two-week at-home recovery period, over a period of sixteen months).

Plaintiff also suggests that the ALJ violated the Agency's Program Operations Manual
Systems ("POMS") when the ALJ—after finding Plaintiff "more limited" than he was found by
the state agency psychologists—purportedly failed to include limitations in the RFC that were
more restrictive than were those consultants' findings. *Plaintiff's Memorandum of Law*, ECF No.
6, p. 12. Plaintiff's arguments are not well taken. As explained above, the ALJ did include
greater restrictions than those found by the state agency consultants, including restrictions to
goal-oriented work rather than to work requiring strict quotas and to only occasional, brief, and
superficial contact with others. R. 31, 132, 145. Moreover, POMS "lack the force of law and
create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859
(3d Cir. 2007); *see also Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996)
(same) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)).

Plaintiff next contends that the RFC limitation to occasional, brief, and superficial contact
with supervisors, coworkers, and the public is "inconsistent with basic mental demands required
to perform all work." *Plaintiff's Memorandum of Law*, ECF No. 6, p. 13 (citing SSR 85-15); *see
also Plaintiff's Reply Brief*, ECF No. 13, p. 3. Plaintiff specifically argues that "[t]he ability to
interact with coworkers and supervisors on an 'occasional' basis necessarily means that the
Plaintiff is only able to interact appropriately with coworkers and supervisors for up to one-third
of the workday" and, "[i]nversely, for two-thirds of an 8-hour workday the Plaintiff cannot

interact appropriately with coworkers or supervisor." *Plaintiff's Memorandum of Law*, ECF No. 6, p. 13 (citing SSR 83-10). According to Plaintiff, an ability to interact appropriately with others for only one-third of the workday does not constitute a "sustained basis" of eight hours per day, five days a week, or any equivalent work schedule. *Id*. (citing SSR 96-8p, 96-9p). Plaintiff's argument is not well taken. This Court has previously considered and rejected a similar argument, finding that "'courts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public.'" *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (quoting *Torres v. Comm'r of Soc. Sec.*, No. CV 14-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015) (collecting cases)); *see also Vargas v. Saul*, No. 1:19-CV-1858, 2020 WL 2468401, at *7–8 (M.D. Pa. May 13, 2020) (noting that "courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited that claimant to occasional interactions with coworkers or supervisors") (collecting cases); R. 36 (noting that the three jobs identified by the vocational expert that Plaintiff could perform were all unskilled, SVP level 2 jobs). Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.[9]

Plaintiff further argues that the RFC is deficient because it fails to define the terms "brief and superficial" when limiting Plaintiff to only occasional contact with coworkers, supervisors, and the public. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 14. According to Plaintiff, these terms are unclear and their use by the ALJ therefore undermines the vocational expert's testimony regarding the availability of jobs that Plaintiff could perform with the ALJ's RFC. *Id*.

---

[9] To the extent that Plaintiff argues that an inability to appropriately interact with others violates the POMs, *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 13–14, that argument is unavailing for the reasons already discussed.

This Court again disagrees. Plaintiff's counsel did not object to or otherwise ask the ALJ to clarify these terms at the hearing; in fact, Plaintiff's counsel expressly agreed that the ALJ had "clarified everything." R. 115–16 (reflecting the ALJ's hypothetical and the vocational expert's testimony regarding available jobs with the RFC found by the ALJ), 119–20 (reflecting the ALJ's invitation to counsel to pose "other alternative hypotheticals you wanted to ask or other questions you wanted to ask the VE [vocational expert]?" and counsel's response, "I think you clarified everything"); *see also Carolyn C. v. Kijakazi*, No. 1:20-CV-3544, 2021 WL 4932785, at *15 (D.N.J. Oct. 22, 2021) ("[A] failure to challenge a vocational expert's testimony at the hearing waives Plaintiff's right to later object to that testimony."); *Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021) ("Here, [the plaintiff] neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings open for post-hearing submissions. Consequently, she waived the right to object to that testimony."). Notably, Plaintiff has not identified—nor can the Court locate—any evidence in the hearing transcript demonstrating that the vocational expert (or counsel) was confused as to the meaning of the ALJ's terms "brief and superficial." *See generally* R. 114–21. Plaintiff therefore has not established that remand is warranted on this basis.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

### B.    Opinion Evidence

Plaintiff also argues that the ALJ "improperly rejected" Dr. Mintzer's opinion. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 17–19; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. This Court disagrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[10] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

---

[10] As previously noted, Plaintiff's claim was filed on January 14, 2020.

sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As

26

previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

At step four of the sequential evaluation, the ALJ found Dr. Mintzer's opinion unpersuasive, reasoning as follows:

> In connection with his application, the claimant underwent a mental status examination with Lawrence Mintzer, Ph.D. in April 2020 (Exhibit 4F). At that time, he complained of chronic depression with difficulty leaving his home due to paranoia that someone is going to hurt him (Id. at 1). However, he reported that he is not able to work due to physical symptoms (Id. at 2). In fact, he acknowledged that he was not participating in any mental health treatment and last saw a psychiatrist when he was in his 20s (Id.). Upon examination, his concentration was fairly good, as he performed serial 7s somewhat slowly and made one mistake, but was able to correctly spell "world" both forwards and backwards (Id. at 3). His memory was also good, as he was able to recall 2/3 items after one and five minutes though was unable to recall what he had eaten for dinner the night before (Id.). He was able to repeat 6 digits forward and 4 in reverse (Id.). Given his examination, Dr. Mintzer opinioned [sic] that the claimant suffers from moderate to severe limitations due to a combination of physical health problems and psychological problems (Id.). The undersigned does not find Dr. Mintzer's opinion persuasive, as he contemplated the claimant's physical impairments, which he did not evaluate, and failed to provide a specific opinion regarding the claimant's residual functional capacity.

R. 34. In challenging the ALJ's consideration in this regard, Plaintiff argues that Dr. Mintzer properly considered the effect of Plaintiff's physical impairments on his mental state. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 18. Plaintiff also argues in reply that the ALJ failed to adhere to the requirements of 20 C.F.R. § 404.1520c because the ALJ did not discuss the consistency or supportability of Dr. Mintzer's opinion. *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4.

The Court is not persuaded that this issue requires remand. Even assuming, for present purposes only, that the ALJ erred in finding that Dr. Mintzer had improperly considered Plaintiff's physical impairments and erred in failing to expressly discuss the consistency and supportability of Dr. Mintzer's findings, Plaintiff has not explained how such errors amount to anything more than harmless. *See Plaintiff's Memorandum of Law*, ECF No. 6, p. 18; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. The ALJ correctly found that Dr. Mintzer had offered no opinions as to Plaintiff's functional limitations. R. 34; *see also* R. 427–31. Notably, Plaintiff has not identified any specific functional limitation offered by Dr. Mintzer, let alone any additional limitation that should have been included in the RFC or that would otherwise require remand. *See Plaintiff's Memorandum of Law*, ECF No. 6, p. 18; *Plaintiff's Reply Brief*, ECF No. 13, pp. 3–4. Based on this record, Plaintiff has not persuaded this Court that the ALJ's consideration of Dr. Mintzer's findings amount to anything more than harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Plaintiff also argues that, where the ALJ rejected Dr. Mintzer's findings because that examiner did not provide a specific functional opinion, the ALJ had an affirmative duty to

contact Dr. Mintzer and request that information. *Plaintiff's Memorandum of Law*, ECF No. 6, p. 18 (citing 20 C.F.R. § 404.1519p(b)). This Court disagrees. The regulation on which Plaintiff relies provides that "[i]f the [consultative examiner's] report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." *Id*. at § 404.1519p(b). However, "the ALJ only need recontact the medical source when the evidence received from the medical source is inadequate to determine whether or not the claimant is disabled, not because the ALJ finds the doctor's opinion inconsistent with the claimant's medical records." *Gladden o/b/o Hyman-Self v. Berryhill*, 2018 WL 1123763, at *6 (E.D. Pa. Feb. 28, 2018) (internal quotation marks omitted) (quoting *Kelly v. Colvin, C.A*. No. 09-759-RGA-SRF, 2013 WL 5273814, at *16 (D. Del. Sept. 18, 2013)). Notably, "[t]here is no obligation to recontact a medical source when the ALJ finds that the record as a whole provides an adequate basis to determine whether the claimant is disabled." *Id*. As detailed above, the ALJ considered years of objective medical evidence as well as the opinions of reviewing state agency psychologists and implicitly determined that the record as a whole provided information sufficient to reach a conclusion. R. 24–37. Under the circumstances presented in this case, Plaintiff has not persuaded the Court that the ALJ was required to recontact Dr. Mintzer.

In short, for all these reasons, any errors in the ALJ's consideration of Dr. Mintzer's report will not serve as a basis for remand.

### C.    Plaintiff's and Third Party's Statements

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 19–22; *Plaintiff's Reply Brief*, ECF No. 13, pp. 4–6. For the reasons that follow, Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 31–35. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 32. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support her findings. R. 32–35. The ALJ further explained her consideration of Plaintiff's subjective statements:

> Upon consideration of the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some symptoms. However, having considered the entire evidence of record and the criteria of SSR 16-3p and 20 CFR 404.1529, the undersigned finds that the claimant's statements that [he] is unable to work are not supported and are not consistent in light of the discrepancies between the claimant's assertions, testimony, and medical record. The record shows that the treatment the claimant has received has been routine and conservative, consisting mainly of the use of medications. Moreover, up until recently, his mental illness was managed with medications as prescribed by his primary care provider. Following his June 2022 voluntary hospitalization, he participated in an acute partial care program for a short period before he was stepped down to outpatient treatment. Therefore, the evidence fails to substantiate the claimant's allegations of debilitating limitations. Accordingly, [] the undersigned finds that the claimant's testimony and allegations are not fully consistent with the evidence of record.

31

R. 35; *see also id.* ("The claimant has a lot of complaints, but there is little objective evidence to support those complaints."). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff argues that the ALJ failed to properly consider his subjective statements of disabling mental limitations because the ALJ "minimized the impact of those impairments upon the Plaintiff's RFC by characterizing the record in such a way as to downplay the severity of the symptoms." *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 20–21 (complaining that Plaintiff underwent an in-patient hospitalization that the ALJ "downplay[ed]" as voluntary) (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 13, pp. 4–5 (same). The Court is not persuaded that this issue requires remand. In considering Plaintiff's June 2022 inpatient hospitalization, the ALJ expressly noted the circumstances surrounding that hospitalization, including Plaintiff's suicidal ideation as well as his statement that he needed a break from responsibilities:

> By December [2021], he indicated that the use of Vistaril resulted in a great reduction of anxiety (Id. at 27). Despite this, in June 2022, he was admitted to a psychiatric facility (Exhibit 10F) after expressing suicidal ideation with a plan (Exhibit 12F, page 24). At that time, he indicated that he was merely taking psychotropic medications as prescribed by his primary care provider and was experiencing increased depression due to life stressors, including unemployment, loss of custody of his two children due to child abuse allegations, physical impairments and lack of finances (Id.). As an inpatient, he was minimally compl[iant] with treatment, as he isolated himself throughout the day in his room, did not participate in group therapy and merely took psychotropic medications (Id. at 146). He indicated that he found his stay "peaceful," as he needed a break from life's responsibilities (Id.), sleep and time to think (Id. at 168). After a few days, he requested discharge, as he felt okay and denied suicidal ideations (Id. at 146). Subsequently, he participated in an acute partial care program for post-traumatic stress disorder with major depressive disorder (Exhibits 10F & 16F). By August, he was stepped down to an outpatient level of care (Exhibit 10F).

32

R. 34. Reading the ALJ's opinion as a whole, this Court is not persuaded that the ALJ improperly "downplay[ed]" Plaintiff's subjective complaints. In any event, to the extent that Plaintiff points to his inpatient hospitalization and intensive outpatient program, the Court has already explained that the ALJ considered that evidence when crafting the RFC determination, and that the ALJ's RFC determination is supported by substantial evidence. The Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).

Plaintiff also complains that the ALJ improperly discounted the third party statement of his mother. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 13, pp. 5–6. The ALJ expressly addressed this statement as follows:

> A statement was also provided by the claimant's mother in a third-party function report (Exhibit 3E). This statement is not persuasive, as it is a lay opinion based upon casual observation, rather than objective medical examination and testing. Further, it is potentially influenced by loyalties of family. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit his functional abilities. Ultimately, this statement is not persuasive for the same reasons set forth above in finding the claimant's allegations to be less than wholly consistent with the evidence of record.

R. 32. Plaintiff contends that the ALJ erred when discounting his mother's statement simply because she was a layperson and not a medical professional and because she may be biased. *Plaintiff's Memorandum of Law*, ECF No. 6, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 13, pp.

5–6. According to Plaintiff, the ALJ's error in this regard "violates SSR 16-3p and constitutes further harmful error." *Plaintiff's Memorandum of Law*, ECF No. 6, p. 22.

Even assuming, for the sake of argument, that the ALJ erred in assessing this third party statement, Plaintiff has not explained how any such error harmed him. *See Plaintiff's Memorandum of Law*, ECF No. 6, pp. 21–22; *Plaintiff's Reply Brief*, ECF No. 13, pp. 5–6. Plaintiff does not identify any particular portion of that statement or functional limitation based on that statement that the ALJ's RFC failed to accommodate or that required any different or additional RFC limitation. *See id*. Based on this record, the ALJ's error in this regard, if any, is harmless and does not require remand. *See Shinseki*, 556 U.S. at 409−10; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.") (citation omitted); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case"). In short, the ALJ's assessment of his mother's third party statement will not serve as a basis for remand of this action. *Id*.

## VI.    CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: January 26, 2026                     *s/Norah McCann King*
                                    NORAH McCANN KING
                                    UNITED STATES MAGISTRATE JUDGE